UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL WERB,                                          Case No. 13-CV-0669 (PJS/JSM)

            Plaintiff,

v.                                                                    ORDER

RELIASTAR LIFE INSURANCE
COMPANY,

            Defendant.

Mark M. Nolan, NOLAN, THOMPSON & LEIGHTON, PLC, for plaintiff.

William D. Hittler, NILAN JOHNSON LEWIS PA, for defendant.

Plaintiff Michael Werb brings this action for disability-insurance benefits against

defendant ReliaStar Life Insurance Company ("ReliaStar") under the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.  Werb also brings a claim for

statutory damages under 29 U.S.C. § 1132(c)(1)(B) for ReliaStar's alleged failure to respond to

Werb's requests for information.

This matter is before the Court on the parties' cross-motions for summary judgment.  For

the reasons stated below, each party's motion is granted in part and denied in part.  Specifically,

Werb's motion is granted, and ReliaStar's motion is denied, as to Werb's claim for benefits, and

ReliaStar's motion is granted, and Werb's motion is denied, as to Werb's claim under

§ 1132(c)(1)(B).

I. BACKGROUND

Werb is a former employee of Goodrich Corporation ("Goodrich") and a participant in

Goodrich's long-term disability ("LTD") plan.  RS 733; RS 347-400.[1]  During the relevant time

period, ReliaStar insured the benefits provided under the LTD plan through a group policy issued

on October 1, 1994.[2]  RS 347-400.

Following an April 1997 work-related car accident, Werb experienced ongoing pain.  He

applied for LTD benefits, but ReliaStar denied his claim on the basis that he had released his

claim in a settlement agreement with Goodrich.  *Werb v. ReliaStar Life Ins. Co.*, No. 08-5126,

2010 WL 3269974, at *1, *4 (D. Minn. Aug. 17, 2010).[3]  Werb then brought an ERISA action

against ReliaStar and Goodrich, and that action was assigned to the undersigned.  *Id.* at *4.

Months after Werb's lawsuit was filed, ReliaStar announced that it was undertaking a "voluntary

---

[1]Unless otherwise noted, all documents cited by ReliaStar Bates number (i.e., "RS __")
are attached to the December 5, 2013 affidavit of Sandra Kaserman.

[2]Werb refers to the governing policy as the "ReliaStar 1998 Plan," thus suggesting that
the policy was issued in 1998.  The document to which Werb refers, however (Nolan Aff.,
Dec. 6, 2013, Ex. E Tab 18, RS 1455-71), is the same 1994 policy to which ReliaStar refers
(albeit by different Bates numbers).

The Court notes that the record is confusing because the ReliaStar Bates numbers are
inconsistent.  For example, RS 1455-71 in ReliaStar's submissions does not match RS 1455-71
in Werb's Exhibit E.  According to Werb, ReliaStar inexplicably re-ordered and re-numbered the
record with new Bates numbers at some point between the administrative process and the parties'
summary-judgment motions.

The Court discourages this practice.  But because ReliaStar's submissions constitute the
bulk of the record, the Court has where possible cited ReliaStar's newer Bates numbers.  In some
instances, there are multiple ReliaStar Bates numbers on ReliaStar's documents; in those
instances, the Court cites the number located closest to the bottom right-hand corner of the page.

[3]To distinguish Werb's earlier case from this case, the Court will refer to the earlier case
as "*Werb I*" both when citing reported decisions and when citing the Court's electronic docket.

appeal review" of Werb's claim.  *Id.*  ReliaStar admitted that it had no guidelines or protocols for

conducting a "voluntary appeal review" and that such a procedure was not authorized in any

claim manual or in the applicable insurance policy.  *Id.*

After concluding this review, ReliaStar informed Werb that it had come up with a second

reason for denying his claim for benefits:  Not only had Werb released his claim, but the medical

information submitted by Werb had failed to establish that he was disabled.  *Id.* at *5.  ReliaStar

then moved for summary judgment, relying in part on this newfound reason for denying benefits.

*Id.*  The Court held that ReliaStar's new conclusion of non-disability was not properly before it,

and denied ReliaStar's motion for summary judgment.  *Id.* at *6-8, *14.  In so doing, the Court

observed that by "commencing a 'voluntary appeal review' out of the blue and long after this

lawsuit had been filed, ReliaStar appears to have acted more as Werb's adversary than as his

fiduciary."  *Id.* at *7.  With the parties' agreement, the Court later ordered that the case be

remanded to ReliaStar so that it could make a proper determination as to disability.  *Werb I*,

No. 08-5126, ECF No. 46.

On remand, ReliaStar assigned Werb's claim to Katherine Romano.  Nolan Aff., Dec. 6,

2013, Ex. A ¶ 7.[4]  Romano was told that she had been "hand-picked" by ReliaStar for this task.

*Id.*  After spending approximately 80 hours reviewing Werb's records, *id.*, Romano determined

that Werb was disabled for purposes of the policy as of February 18, 1998, subject to the

argument that Werb had released his claims, RS 1776.  Because ReliaStar lacked updated

---

[4]Much of the information about Romano's involvement is derived from submissions in a
separate lawsuit that Romano later brought against ReliaStar.  *See Romano v. ING ReliaStar Life
Ins.*, No. 12-0137 (SRN/JJK) (D. Minn. removed Jan. 18, 2012).

medical records, however, Romano was only able to conclude that Werb was disabled through January 31, 2007.  RS 1777.

On November 8, 2010, Romano notified Werb of the determination that he met the policy's definition of disability through January 2007.  RS 1776-77.  The parties then returned to court — this time in front of Judge Susan Richard Nelson, to whom the case had been transferred — to litigate the issue of the release.  *See Werb I*, 847 F. Supp. 2d 1140 (D. Minn. 2012). Judge Nelson determined that Werb had not released his claim against ReliaStar.  *Id.* at 1153. The parties later settled Werb's claim for attorney's fees, and ReliaStar did not appeal.  *Werb I*, No. 08-5126, ECF Nos. 114, 117, 118.

Meanwhile, in January 2011, Werb submitted updated medical records to ReliaStar in an effort to establish his continuing right to benefits after January 2007.  RS 1573 (indicating that Werb had submitted information as of January 5, 2011).  Romano reviewed the submissions and concluded that Werb continued to be disabled.  Nolan Aff., Dec. 6, 2013, Ex. A ¶ 12; *id.* Ex. B at 166-67.  ReliaStar nevertheless instructed Romano to sign and send a March 29, 2011 letter informing Werb that he had to undergo an independent medical examination ("IME") and requesting a significant amount of additional information.  Nolan Aff., Dec. 6, 2013, Ex. A ¶¶ 14-15; RS 1573.  In particular, ReliaStar requested the following:

> 1. Please list all traveling of more than 50 miles from your home that you [have] done since the date that you stopped working for The BF Goodrich Company.  Include length of trips, reason for trips, activities during trips, mode of transportation, and any special accommodations that were required due to your medical conditions.
>
> 2. Please list all books, poetry, and other writings, published or unpublished, that you have authored and/or co-authored

> since the date that you stopped working for The BF
> Goodrich Company.

3.      Please submit a copy of your Federal Income Tax returns
        from 2007 through the present.

RS 1573. At some point (although it is not clear exactly when), ReliaStar also asked for Werb's

complete Social Security claim file. RS 243 (denial letter noting Werb's failure to provide Social

Security file). Werb informed ReliaStar that he was willing to provide his tax returns, but

objected to the remaining requests. RS 1574.

One of Romano's managers testified that he had never before asked for such detailed

information about travel or writings from a claimant who had already been found disabled.

Nolan Aff., Dec. 6, 2013, Ex. C at 66-69; *see also id.* Ex. A ¶¶ 14-16; *id.* Ex. B at 183. Romano

herself questioned the request for Werb's Social Security file, stating in a contemporaneous

email that she had never before requested an entire claim file from the Social Security

Administration and that she felt that ReliaStar was on a "witch hunt" against Werb. Nolan Third

Aff., Jan. 10, 2014 (attached, unnumbered exhibit).

On July 20, 2011, ReliaStar informed Werb that it was terminating his benefits effective

February 1, 2007 because he had failed to provide the requested information and failed to attend

two scheduled IMEs. RS 243-46. ReliaStar stated that it was "unable to conduct a fair

evaluation of Mr. Werb's claim since 2007 without all of the information" and that, without the

information, ReliaStar was "not able to determine if any change has in fact taken place in

Mr. Werb's physical condition." RS 245.

After ReliaStar denied his claim, Werb indicated that he was willing to undergo the

IMEs. RS 299. ReliaStar's only response was to say that it had already made its decision and

that Werb's recourse was to bring an administrative appeal.  RS 301.  Werb submitted an

administrative appeal in January 2012.  RS 282-91.  Although the record is somewhat hard to

follow on this point, the parties apparently agree that Werb's appeal was transferred to DRMS,

an administrative-services provider, which handled the remainder of the administrative process.

(Where relevant, the Court's references to "ReliaStar" are intended to include DRMS.)

      In response to Werb's appeal, ReliaStar reiterated its requests for travel information, tax

returns, a list of Werb's writings, and information from Werb's Social Security file.  RS 235-36.

ReliaStar also added a request that Werb supply a complete list of his paid and unpaid work

activities since leaving Goodrich and further informed Werb that it intended to undertake an

independent review of Werb's medical records.  RS 235-36.  Werb objected to ReliaStar's

requests for information.  RS 113-15.

      On March 19, 2012, ReliaStar denied Werb's appeal.  RS 194.  ReliaStar began by

admitting that it should not have denied Werb's claim on the basis of his failure to attend the

IMEs.  RS 195.  ReliaStar also said that it no longer needed a list of Werb's travels or the other

information that it had requested.  RS 195-96.  Instead, ReliaStar announced that it had

concluded that Werb was not disabled on the basis of an independent review of Werb's medical

records by Dr. Robert Keller, a physician board-certified in orthopedic surgery.  RS 194-97.

      After undertaking a detailed review of Werb's medical records going back to the 1997 car

accident, Dr. Keller concluded that Werb had *never* been disabled (with the possible exception of

a few weeks following the accident).  RS 221 (opining that, from February 18, 1998 through the

present, Werb had no condition resulting in impairment); RS 222 (opining that Werb was capable

of full-time work from February 18, 1998 through the present and noting that his initial diagnosis

might have limited his work activities for 6 to 12 weeks).  In making this finding, Dr. Keller

relied on the records that ReliaStar had in its possession when it initially found Werb to be

disabled.  In particular, Dr. Keller noted that Werb's earlier IMEs all "failed to demonstrate

significant musculoskeletal pathology," that "[p]hysical examinations have been consistently

quite normal," and that "Medical Record Reviews and IMEs have almost consistently not

supported diagnoses of a significant medical condition or impairment."  RS 221.

In a letter notifying Werb of the denial of his appeal, ReliaStar informed Werb's attorney

that Werb could submit a second appeal.  RS 196, 198.  The letter stated that "[b]y accepting this

offer to provide an additional review of your client's claim, you agree we will reconsider all of

the information previously submitted and re-evaluate the claim in its totality, including all

applicable policy provisions and previous conclusions reached."  RS 196.  Werb requested

clarification about whether he had exhausted his administrative remedies, and ReliaStar

responded that the second appeal was required.  RS 200; RS 166.

Werb then filed a second appeal.  RS 93-115.  ReliaStar informed Werb that it had

referred his file for additional independent medical reviews, to which Werb objected.  RS 70;

RS 36.  ReliaStar responded that, because Werb had submitted a second appeal, he had agreed

that ReliaStar could reevaluate his claim in its totality.  RS 51.  Werb then sent a letter

withdrawing his appeal (which Werb characterized as "voluntary") and informing ReliaStar that

he planned to bring a lawsuit.  RS 35.

On the same day, ReliaStar received the results of the additional medical reviews.  RS 23-

31.  Like Dr. Keller, the other reviewers — Dr. Jaime Foland and Dr. Charles Kershner —

concluded that Werb had never been disabled (with the possible exception of a few weeks

following the 1997 car accident).  RS 29 (Dr. Foland opining that Werb's diagnosis "would have

caused restrictions limitations for 6 to 12 weeks following the accident but not beyond"); *id.*

(Dr. Kershner opining that "[b]eyond this 12 week period no functional impairment is supported

[from] an orthopedic standpoint").  And like Dr. Keller, these doctors also relied heavily on

records that ReliaStar had in its possession when it initially found Werb to be disabled.  RS 26

(noting that "various independent medical evaluators consistently found benign physical

examinations without focal neurological deficits"); RS 27-28 (canvassing Werb's medical

records).  A few days later, ReliaStar informed Werb that his second appeal was denied.  RS 20-

22.  This lawsuit followed.

## II.  ANALYSIS

### A.  *Standard of Review*

#### 1.  Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome

of the lawsuit under the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

#### 2.  ERISA

An ERISA administrator's decision to deny benefits is reviewed de novo unless the plan

grants the administrator discretionary authority to determine eligibility or construe the terms of

the plan. *Nichols v. Unicare Life & Health Ins. Co.*, 739 F.3d 1176, 1181 (8th Cir. 2014). Under

abuse-of-discretion review, the decision to deny benefits must be upheld if it is supported by

substantial evidence, meaning more than a scintilla but less than a preponderance. *Govrik v.*

*Unum Life Ins. Co. of Am.*, 702 F.3d 1103, 1108-09 (8th Cir. 2013).

In this case, the parties spar over whether the plan grants discretion to ReliaStar. This

dispute is surprisingly (and unnecessarily) complex, involving numerous interlocking contractual

provisions in both the original plan and a later-adopted "wrap plan" into which the original plan

was incorporated. Ultimately, the Court concludes that it need not resolve this dispute because,

even if ReliaStar is entitled to abuse-of-discretion review, ReliaStar's decision to deny benefits

cannot be upheld. But the Court will first address why it believes that ReliaStar is likely *not*

entitled to abuse-of-discretion review.

In its original form, the LTD plan consisted of two documents: the 1994 group policy and

an insurance certificate. RS 347-400. ReliaStar does not claim that the policy itself contains any

discretion-granting language. Instead, ReliaStar points to a section of the insurance certificate

entitled "Summary Plan Description" ("SPD").[5] That section of the certificate purports to grant

discretion to ReliaStar. RS 363 ¶ 8.

The certificate specifically provides, however, that "[t]his certificate is not an insurance

policy" and that "[i]n any case of differences or errors, the Group Policy rules." RS 354. In

---

[5] The SPD section in the certificate should not be confused with a separate SPD apparently dating from 1998. RS 1267-83. The 1998 SPD also contains discretion-granting language, RS 1282, but ReliaStar does not rely on it in this case, likely because it is clearly not effective under *Jobe v. Medical Life Insurance Co.*, 598 F.3d 478, 485-86 (8th Cir. 2010). *See* RS 1282 (SPD section stating that, in the event of any conflict between the SPD and the plan, the plan controls). In addition, the 1998 SPD grants discretion, not to ReliaStar, but to a "Benefits Appeals Committee," the definition of which the Court could not locate.

addition, although some portions of the certificate are incorporated into the policy, the policy

does *not* incorporate the SPD section of the certificate.  RS 347 (stating that "[t]he contract"

includes, among other things, "[t]he Insured's Benefits Section and the provisions of the

Certificate which are made a part of that section"); RS 351 (the "Insured's Benefits Section"

incorporates all sections of the insurance certificate *except* the SPD section).  Under these

provisions, then, the policy (which does not contain discretion-granting language) controls over

the SPD section of the certificate (which does contain such language, but which is not part of the

policy).  As a result, the plan in its original form does not appear to grant ReliaStar any

discretion.  *See Jobe v. Med. Life Ins. Co.*, 598 F.3d 478, 485-86 (8th Cir. 2010) (SPD provision

granting discretion was not effective where policy did not grant discretion and the SPD stated

that, in case of conflict, the policy prevailed).

 ReliaStar contends that *Jobe* and similar cases do not apply because the SPD section in

the certificate is the only section setting forth ReliaStar's administrative-review procedure.  As a

result, ReliaStar argues, the SPD section is more than just a summary of other plan documents; it

is an integrated part of the plan.  In so arguing, ReliaStar is apparently comparing this case to

*Administrative Committee of the Wal-Mart Stores, Inc. v. Gamboa*, 479 F.3d 538 (8th Cir. 2007).

 In *Gamboa*, the Eighth Circuit held that an employer could recoup healthcare benefits

even though its right to recoupment appeared only in the SPD.  *See Jobe*, 598 F.3d at 482

(summarizing *Gamboa*).  As *Jobe* explained, however, in *Gamboa* there was no written

insurance policy; the *only* source of benefits was the SPD, and the SPD itself therefore

constituted the policy.  *Id.*  Unlike *Gamboa*, here there is an underlying written policy, and that

policy specifically excludes the SPD section of the insurance certificate (with its discretion-granting language) from being incorporated into the policy.

In addition, *Gamboa* "noted the obvious inconsistency of the employee's attempt to avoid the adverse consequences of the summary plan description while accepting the benefits only it provided." *Id.* But Werb is not seeking benefits granted only in an SPD while also trying to avoid unfavorable provisions of that same SPD. Instead, Werb is seeking benefits under the policy — specifically, those portions of the insurance certificate that are incorporated into the policy. RS 351. The discretion-granting provision he seeks to avoid is *not* part of that policy.

Moreover, even if the administrative-review procedure set forth in the SPD section of the certificate could be considered a "benefit," it simply describes a procedure to which beneficiaries have had an independent right under ERISA since before the insurance certificate issued. *See* 29 C.F.R. § 2560.503-1(g), (h) (1993). The SPD section of the certificate therefore does not grant Werb any benefit that he would not otherwise have. It appears to the Court, then, that the plan in its original form does not effectively grant ReliaStar any discretion.

The complications do not end there, however. Effective January 1, 2010, Goodrich rolled its various ERISA welfare-benefit plans — including the plan at issue in this case — into an overarching master plan that the parties refer to as the "wrap plan." Bromen Aff., Dec. 6, 2013, Ex. B RS 6586; *id.* RS 6588 (incorporating "Component Plans" listed in Appendix A into the wrap plan); *id.* RS 6643 (Appendix A listing "Long Term Disability" as among the component plans).

The wrap plan grants discretionary authority to the plan administrator to interpret the plan and determine eligibility for benefits. *Id.* RS 6617-18. Under a December 2011 amendment to

the wrap plan, Goodrich's Benefit Design and Administration Committee ("the Committee") is designated as the plan administrator.  *Id.* RS 6582.  This is fine as far as it goes, but ReliaStar does not explain how this grant of discretion to the *Goodrich* committee extends to either *ReliaStar* or *DRMS*.  The Committee is authorized to delegate its authority, but it must do so in writing, *id.* RS 6618, and ReliaStar has not pointed to any writing in which the Committee delegated its authority to ReliaStar, DRMS, or anyone else.[6]  *See McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 793 (8th Cir. 2003) (although the plan conferred discretion on the plan sponsor, a de novo standard applied because the insurer did not present evidence that its contractual agreement with the sponsor granted the insurer such discretion).

ReliaStar also points to language in a January 2011 SPD that grants discretion both to the plan administrator and to claims administrators.  Bromen Aff., Dec. 6, 2013, Ex. A RS 6646; *id.* RS 6831.  The SPD broadly defines claims administrators to include "[a]ny entity that reviews and determines whether to pay claims" and expressly notes that they may include insurance companies or their "designated claims review organizations . . . ."  *Id.* RS 6663.  Under this broad definition, both ReliaStar and DRMS would likely be considered claims administrators. Like the other SPDs in this case, however, the January 2011 SPD states that "[i]f there are any differences between this summary plan description . . . and the other official plan documents, the terms contained in the other plan documents govern."  *Id.* RS 6646.  ReliaStar has not cited any

---

[6]The Court does not understand ReliaStar to be arguing that the various SPDs constitute such a delegation, and it is hard to understand how they could (even though, as ReliaStar argues, the SPDs are all incorporated into the wrap plan).  The SPDs are not contracts between the Goodrich committee and ReliaStar; they are explanatory documents given to beneficiaries. Moreover, as discussed below, the problem remains that all of the SPDs indicate that, where they differ from other plan documents, the other plan documents control — which would undo any delegation of discretion in the SPDs that does not appear in other plan documents.

portion of the wrap plan that grants discretion to claims administrators.  To the extent that the

SPD extends discretion to claims administrators, therefore, it is ineffective.  *See Jobe*, 598 F.3d

at 485-86.

It is true, as ReliaStar argues, that the wrap plan also incorporates all associated SPDs and

insurance certificates into the plan itself.  Bromen Aff., Dec. 6, 2013 Ex. B RS 6588 § 2.17.  In

the Court's view, however, this cannot fix the problem.[7]  As noted, one way or another the SPDs

all instruct beneficiaries that, whenever there are differences between the SPDs and other plan

documents, the other plan documents control.[8]  Incorporating the SPDs into the wrap plan also

incorporates this language.  As a result, even though the SPDs are incorporated into the wrap

plan, the SPDs are not on the same footing as the other plan documents; where there are

differences between them, the other plan documents still control.

Finally, there is an additional reason why incorporating discretion-granting language from

1990s-era SPDs into the wrap plan appears problematic.  The wrap plan states that any conflict or

ambiguity relating to the "general administration" of the plan is to be resolved in favor of the

wrap plan, whereas any conflict or ambiguity relating to plan eligibility, coverage, or benefits is

to be resolved in favor of the original plan.  *Id.* RS 6586.  A grant of discretion appears to relate

---

[7]The Court notes that the Eighth Circuit recently addressed a wrap plan that similarly incorporated SPDs containing discretion-granting language.  *See Shaw v. Prudential Ins. Co. of Am.*, No. 13-1210, 2014 WL 2457646, at *2-3 (8th Cir. June 3, 2014) (per curiam).  Because other plan documents also contained discretion-granting language, however, the Eighth Circuit declined to decide whether incorporating SPDs into the plan effectively incorporated the SPDs' discretion-granting language.  *Id.* at *3.

[8]To be precise, the 1994 insurance certificate states that the policy controls over the certificate.  RS 354.  But as the SPD section of the certificate is the only section not incorporated into the policy, as a practical matter this is the same as saying that the policy controls over the SPD section.

more to "general administration" than to eligibility or coverage, which means that whatever the original plan has to say about discretion would be superseded by the wrap plan and whatever it says (or does not say) about discretion.

At the end of the day, then, it appears that ReliaStar does *not* have discretion to interpret the plan or determine eligibility for benefits. As noted, however, the Court need not definitively resolve this dispute because even if ReliaStar had discretion to make eligibility determinations, its decision to terminate Werb's benefits was an abuse of that discretion.

### B. Disability Benefits

As discussed above, ReliaStar found in November 2010 that Werb had met the policy's definition of "Totally Disabled" for a nearly nine-year period — from February 18, 1998 through January 31, 2007. RS 1776-77. Notably, ReliaStar made this determination in the middle of hotly-contested litigation and pursuant to a court order remanding the case to ReliaStar to make a benefits determination. Given the circumstances, ReliaStar had every incentive to ensure that it performed an extremely careful review of Werb's file. And by all accounts, that is exactly what ReliaStar did. ReliaStar "hand-picked" Katherine Romano, an experienced reviewer, and she spent 80 hours reviewing Werb's records before coming to the conclusion that he was totally disabled and thus entitled to benefits.

After deciding that Werb was totally disabled and thus entitled to benefits from February 1998 through January 2007, ReliaStar requested updated medical records in order to assess whether Werb continued to be totally disabled after January 2007. RS 1777. Werb complied and, after much wrangling between the parties over ReliaStar's request for an IME and the additional information, ReliaStar eventually obtained a medical-file review from Dr. Keller.

-14-

On the basis of that review, ReliaStar upheld its decision to terminate Werb's benefits as of

February 1, 2007 — a termination that (as discussed above) had purportedly been based on

Werb's failure to cooperate.  After Werb appealed for the second time, ReliaStar obtained two

more medical-file reviews — this time from a physiatrist and an orthopedic surgeon — and those

reviewers agreed with Dr. Keller's conclusions.

The Eighth Circuit has held that "the previous payment of benefits is a circumstance that

must weigh against the propriety of an insurer's decision to discontinue those payments" unless

the information available to the insurer "alters in some significant way . . . ."  *McOsker v. Paul*

*Revere Life Ins. Co.*, 279 F.3d 586, 589 (8th Cir. 2002).  In addition, the Eighth Circuit has said

that in determining whether an insurer has properly terminated benefits, "it is important to focus

on the events that occurred between the conclusion that benefits were owing and the decision to

terminate them."  *Id.* at 590; *see also Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d

880, 885 (8th Cir. 2002) (insurer failed to reconcile its initial conclusion that the insured was

unable to perform sedentary work with its conclusion five months later that she could perform

sedentary work); *Walke v. Grp. Long Term Disability Ins.*, 256 F.3d 835, 840 (8th Cir. 2001)

("Nothing in the claims record justified Reliance's decision that a change of circumstances

warranted termination of the benefits it initially granted.").

ReliaStar contends that, after it initially found Werb to be disabled, the information

available to it altered significantly because it obtained Werb's updated medical records.  This

cannot be true, however, because the updated medical records do not show any change in Werb's

condition nor shed any new light on its nature.  The new medical records merely document that

Werb was continuing to obtain refills of his medication, and the new records include detailed,

signed statements from Werb's treating physician (Dr. Wyne) opining that Werb continued to be

disabled.  RS 2157-60; RS 2118-21.  In other words, the new medical records are entirely

consistent with ReliaStar's initial finding of disability; indeed, ReliaStar was already aware that a

number of medical evaluators had opined that there was not much more that could be done for

Werb.[9]  *See, e.g.*, RS 2209 (February 1998 opinion that Werb had reached "maximum medical

improvement" and was at a "treatment plateau"); RS 2392 (similar opinion from May 1998).

Nothing in these records could lead a reasonable insurer to change its mind about whether Werb

was disabled.

ReliaStar also argues that, even if the new medical *records* do not justify its change of

position about the existence of Werb's disability, the medical-file *reviews* that it sought during

the administrative appeals constitute significant new information on which to base its

determination that Werb is no longer disabled.  But all three of the reviewers conclude that Werb

was *never* disabled (with the possible exception of a short period after the April 2007 car

accident).  And crucially, they do so, not on the basis of any new information that was previously

unavailable to ReliaStar, but rather on the basis of the very same medical records on which

ReliaStar relied in determining that Werb *was* disabled from February 1998 through

January 2007.

---

[9]To the extent that ReliaStar may be contending that Werb does not qualify for benefits because, under the policy, he is required to engaged in some more-aggressive form of treatment than simple palliative care, *see* ECF No. 34 at 3, the Court need not consider any such argument because ReliaStar never relied on it during the administrative process.  *See* RS 20-22; RS 194-97; *King v. Hartford Life & Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (en banc) (when reviewing ERISA benefits determinations for abuse of discretion, courts do not consider post hoc rationales).

These reviewers did have access to Werb's post-January 2007 medical records, which were not available to ReliaStar when it made its initial finding of disability.  But as noted, those new medical records simply show that Werb continued to follow a course of treatment involving medication for his pain.  More importantly, none of the reviewers rely on the new medical records to opine that Werb is not disabled, nor do they attempt to reconcile their opinions with ReliaStar's initial finding of disability.  For example, the reviewers do not opine that the new records demonstrate any change in Werb's condition, reveal that Werb had been misdiagnosed, or provide a fuller picture of a condition that was previously only imperfectly understood.  To the contrary, the reviewers clearly imply that ReliaStar should have known from the very beginning that Werb has never been disabled.  But that is not what ReliaStar initially found.  After an extremely thorough review of Werb's medical records by a "hand-picked" reviewer, ReliaStar found that Werb was disabled from February 1998 through January 2007, and ReliaStar has never satisfactorily explained — either to Werb or to this Court — how it could now find that Werb has never been disabled on the basis of *those very same medical records*.

To be clear, the Court does not agree with Werb that ReliaStar must continue paying benefits unless and until there is evidence that his condition has improved.  An insurer may discontinue benefits if new information calls into question the earlier finding of disability, even if the new information relates to a period for which the insurer has already paid benefits.  The problem here is that there is no such new information; instead, the medical-file reviewers found that Werb was not disabled on the basis of the records on which ReliaStar had relied in finding that Werb *was* disabled.  Under these circumstances, the medical-file reviews do not constitute significant new information.

-17-

*Dillard's Inc. v. Liberty Life Assurance Co.*, 456 F.3d 894 (8th Cir. 2006) is not to the

contrary.  In *Dillard's*, the Eighth Circuit found that new medical-record reviews — which

essentially opined that the plaintiff had never been disabled — "constituted a significant change

in the information available" to the insurer and justified the termination of the plaintiff's

disability benefits.  *Id.* at 900.  But the facts of *Dillard's* differ in important respects from the

facts of this case.  In *Dillard's*, the insurer approved an initial one-year period of benefits, with a

follow-up review scheduled to take place in eight months.  *Id.* at 897-98.  When the insurer

initially granted benefits, it had nothing more than a written statement from the plaintiff's

nephrologist and information from interviews with the plaintiff's primary-care doctor and nurse.

*Id.*  The insurer apparently decided to grant a relatively short period of benefits on the basis of

evidence that the plaintiff's working might interfere with her treatment and endanger her health.

*Id.*  Eight months later, after obtaining updated medical records, the insurer submitted the

plaintiff's records to two doctors for review.  *Id.* at 898.  Both doctors opined that the plaintiff's

renal functions had been stable and her blood pressure under control for years.  *Id.*  On this basis,

the insurer denied further benefits.  *Id.*

In contrast to the sparse initial information available to the insurer in *Dillard's*, here

ReliaStar had approximately *eight years'* worth of Werb's medical records on which it based its

initial determination that Werb was disabled.  The information available to ReliaStar included

multiple IMEs as well as at least two medical-file reviews of the type that ReliaStar later relied

on in finding that Werb is not disabled — and, notably, those earlier reviewers came to many of

the same conclusions that the later reviewers did.  *See* RS 218-20 (describing earlier file

reviews); *Werb I*, No. 08-5126, ECF No. 15 at 19, 22 (discussing these file reviews in the earlier

litigation).  Moreover, unlike in *Dillard's*, where the insurer apparently decided to give the plaintiff the benefit of the doubt for an initial period in light of evidence that working might endanger her health, here ReliaStar reviewed Werb's claim in the context of long-running litigation and thus had both the time and the incentive to review Werb's medical file with meticulous care and make a definitive determination.

Other Eighth Circuit cases upholding an insurer's decision to discontinue benefits are similarly distinguishable.  In both *Atkins v. Prudential Insurance Co.*, 404 Fed. Appx. 82 (8th Cir. 2010) (per curiam), and *Kecso v. Meredith Corp.*, 480 F.3d 849 (8th Cir. 2007), the insurers granted benefits for a relatively short period pending their investigations into the plaintiffs' disability claims.  *Atkins*, 404 Fed. Appx. at 86; *Kecso*, 480 F.3d at 854.  As the *Atkins* court stated, "[t]his is not a case in which a plan administrator found a claimant disabled for an extended duration and then overruled that decision years later as in the cases Atkins cites."  *Atkins*, 404 Fed. Appx. at 86.  The situation that *Atkins* distinguishes is precisely this case: ReliaStar found Werb to be disabled for an "extended duration" — nearly nine years — and then overruled that decision years later without any new information to justify its reversal.

The Court therefore concludes that ReliaStar abused its discretion when it decided to discontinue Werb's benefits on the basis of information that did not differ in any material respect from the information that was available to it when it initially found that Werb was disabled.  The Court reaches this conclusion without taking into account the procedural irregularities that

marred ReliaStar's review of Werb's claim.  Those irregularities, however, strengthen the Court's conclusion.[10]

To begin with, before this most recent lawsuit was filed, ReliaStar already had a checkered history with respect to Werb's claim for benefits.  *See Werb I*, 2010 WL 3269974, at *7 ("In commencing a 'voluntary appeal review' out of the blue and long after this lawsuit had been filed, ReliaStar appears to have acted more as Werb's adversary than as his fiduciary."). Since then, ReliaStar's troubling practices have continued, strongly suggesting that something is seriously amiss at ReliaStar.

Katherine Romano — who was "hand-picked" by ReliaStar to review Werb's file and who approved Werb's application for benefits through January 2007 — testified that after reviewing Werb's new medical records, she was prepared to approve a continuation of his benefits past January 2007.[11]  But rather than allowing Romano — the person most familiar with the file — to approve a continuation of benefits, ReliaStar ordered Romano to send Werb a letter asking for a significant amount of additional information as well as another IME.  The Court does not agree with Werb that ReliaStar had no right to seek *any* additional information or to require Werb to undergo another IME.  But these requests struck ReliaStar's own reviewer as

---

[10]In light of the uncertainty in the Eighth Circuit concerning whether and how procedural irregularities alter the standard of review, *see Carr v. Anheuser-Busch Cos.*, 495 Fed. Appx. 757, 763-64 (8th Cir. 2012), the Court treats these irregularities simply as factors to be weighed in determining whether ReliaStar abused its discretion.

[11]ReliaStar objects to the admission of Romano's testimony and other extrinsic evidence of its conduct.  But ReliaStar itself argues that, in determining what standard of review to apply, the Court can look outside the administrative record.  *See* ECF No. 47 at 5.  Moreover, even if it is error for the Court to consider this extrinsic evidence, it is harmless error, as the Court has already concluded that ReliaStar abused its discretion.

highly unusual and problematic; in a contemporaneous email, she said that it appeared that

ReliaStar was conducting a "witch hunt" against Werb.  Moreover, some of the requests were so

broad as to be absurd; for example, ReliaStar sought a list of all of Werb's writings, including

"all books, poetry, and other writings, published or unpublished" since he stopped working for

Goodrich.  On its face, this request required Werb to disclose every letter and every email —

indeed, every grocery list — that he had written over the past decade.  Finally, it is noteworthy

that ReliaStar did not even request this information until after the 45-day time limit to review

Werb's claim had passed.

After Werb failed to comply with these requests, ReliaStar denied his claim, stating that it

was unable to determine whether Werb was disabled without the requested information.  Werb

then offered to undergo an IME, but ReliaStar said that it was too late.  Then, when Werb

appealed, ReliaStar switched positions:  After stating that it could not decide whether Werb was

currently disabled because of his failure to respond to its requests, ReliaStar announced that, lo

and behold, it was indeed able to decide not only that Werb was not currently disabled, but that

Werb had never been disabled.[12]

These are red flags.  Each red flag might be explained away or justified, but taken

together they provide evidence that ReliaStar decided that it would do whatever was necessary to

deny Werb's claim and acted accordingly, once again acting as Werb's adversary rather than as

_____

[12]It is true that, at this point, the review was being conducted by DRMS rather than
ReliaStar itself.  That circumstance does not change the fact that this decision contradicts
ReliaStar's earlier assertion that it could not determine whether Werb was disabled without the
additional requested information.  Indeed, it is inconsistent with DRMS's own request for even
*more* information than ReliaStar had initially requested.

his fiduciary.  The Court therefore grants Werb's motion for summary judgment on his claim for

benefits.

### C.  Statutory Damages

Werb also brings a claim for statutory damages under 29 U.S.C. § 1132(c)(1)(B) on

account of ReliaStar's alleged failure to provide relevant materials for use in Werb's first appeal.

ReliaStar moved for summary judgment on this claim, but Werb did not respond.  The Court

therefore deems Werb's claim to have been abandoned and grants ReliaStar's motion for

summary judgment on the claim.  *See Robinson v. Am. Red Cross*, No. 13-2394, 2014 WL

2118710, at *3 (8th Cir. May 22, 2014) (failure to oppose motion for summary judgment as to a

claim is a waiver of that claim).

### D.  Attorney's Fees and Prejudgment Interest

Werb argues that he is entitled to an award of attorney's fees.  *See* 29 U.S.C. § 1132(g)(1)

(permitting a court to award attorney's fees to either party).  ReliaStar did not respond to Werb's

argument, and the Court finds that an award of attorney's fees is appropriate under the relevant

factors, which include (1) the opposing party's degree of bad faith; (2) the opposing party's

ability to pay; (3) deterrence; (4) the significance of the legal question; and (5) the relative merits

of the parties' positions.  *Nichols v. Unicare Life & Health Ins.*, 739 F.3d 1176, 1184 (8th Cir.

2014).  Although the legal questions in this case are not particularly significant, the other factors

favor an award of fees.  ReliaStar's treatment of Werb has been shabby; it is difficult to

understand how ReliaStar thought it could justify discontinuing Werb's benefits on the basis of

essentially the same record on which it had earlier granted him benefits.  An award of fees is

necessary to deter this type of conduct, and there is no suggestion that ReliaStar lacks the ability to pay.

Werb also seeks an award of prejudgment interest.  "Prejudgment interest awards are permitted under ERISA where necessary to afford the plaintiff other appropriate equitable relief under section 1132(a)(3)(B)." *Christianson v. Poly-America, Inc. Med. Benefit Plan*, 412 F.3d 935, 941 (8th Cir. 2005) (citations and quotations omitted).  Such an award is warranted in this case both to fully compensate Werb for the wrongfully withheld benefits and to prevent ReliaStar from benefitting from its wrongful denial of benefits.  *Id.*  The Court therefore awards prejudgment interest to be calculated under 28 U.S.C. § 1961.  *See Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1331 (8th Cir. 1995) (prejudgment interest on ERISA claims is calculated under § 1961).  The parties did not address the proper interest rate, nor did the parties identify when prejudgment interest began to accrue.  Thus, the Court will defer a decision on those issues pending further submissions from the parties.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.    Defendant's motion for summary judgment [ECF No. 28] is GRANTED IN PART and DENIED IN PART.

2.    Plaintiff's motion for summary judgment [ECF No. 35] is GRANTED IN PART and DENIED IN PART.

3.    Plaintiff's motion is granted, and defendant's motion is denied, as to plaintiff's claim for long-term disability benefits.

4.      Plaintiff's motion is denied, and defendant's motion is granted, as to plaintiff's
        claim for statutory damages under 29 U.S.C. § 1132(c)(1)(B).

5.      Defendant is ORDERED to pay long-term disability benefits to plaintiff for the
        period from February 1, 2007 to the date of judgment, in an amount to be
        determined.

6.      Defendant is ORDERED to pay long-term disability benefits to plaintiff going
        forward, unless a termination of benefits is consistent with the plan and justified
        either by a change in plaintiff's condition or by new information about plaintiff's
        past or existing condition.

7.      Defendant must pay prejudgment interest at the rate provided for under 28 U.S.C.
        § 1961.

8.      If the parties agree on the amount of benefits owed and the interest calculations,
        the parties must submit a joint proposed form of judgment no later than 28 days
        from the date of this order.

9.      If the parties disagree on the amount of benefits owed and the interest
        calculations, they must do the following:

        a.      No later than 28 days from the date of this order, defendant must serve and
                file a brief of no more than 3,000 words documenting and explaining its
                calculation of the benefits and interest owed to plaintiff under this order.

        b.      No later than 14 days after defendant serves and files the above-referenced
                brief, plaintiff must serve and file a response of no more than 3,000 words

documenting and explaining his calculation of the benefits and interest owed to him under this order.

10.   Plaintiff's request for attorney's fees is granted.  No later than 28 days from the date of this order, plaintiff must serve and file an affidavit documenting his reasonable fees and costs incurred in this action.  No later than 14 days after plaintiff serves and files his affidavit, defendant may serve and file a response of no more than 2,000 words.

Dated:  June 25 , 2014                               s/Patrick J. Schiltz
                                                     Patrick J. Schiltz
                                                     United States District Judge