UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL WERB,                                            Case No. 13-CV-0669 (PJS/JSM)

          Plaintiff,

v.                                                                            ORDER

RELIASTAR LIFE INSURANCE
COMPANY,

          Defendant.

Mark M. Nolan, NOLAN, THOMPSON & LEIGHTON, PLC, for plaintiff.

William D. Hittler, NILAN JOHNSON LEWIS PA, for defendant.

This is the second lawsuit that plaintiff Michael Werb has brought against defendant ReliaStar Life Insurance Company ("ReliaStar") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., regarding his entitlement to disability-insurance benefits. During the course of the previous lawsuit, ReliaStar determined that Werb was disabled and entitled to benefits through January 31, 2007, but asked for additional medical information in order to determine Werb's entitlement to benefits after that date. That request, and ReliaStar's later denial of further benefits, eventually led to this lawsuit. The parties cross-moved for summary judgment on Werb's claim for reinstatement of his benefits, and on June 25, 2014, the Court granted Werb's motion and denied ReliaStar's.[1]  ECF No. 52.

*A. Benefit Amount*

In moving for summary judgment, the parties did not give the Court any information regarding the amount of the monthly benefit to which Werb would be entitled if he prevailed on

---

[1] The Court also dismissed Werb's claim for statutory damages.

his claim. For that reason, the Court invited further submissions in order to calculate a final judgment and determine the amount of attorney's fees and prejudgment interest to be awarded. The Court assumed that this would be an easy task, given that Werb had already been receiving benefits and was simply seeking to reinstate them. Nevertheless, the Court anticipated the possibility that the parties' numbers might differ somewhat and accordingly gave them the opportunity to provide short explanations of their calculations.

The parties were not able to agree on a number and so filed briefs addressing their dispute. In those briefs, the parties informed the Court for the first time that ReliaStar has never actually calculated the amount of the monthly benefit to which Werb is entitled. Instead, the parties reached a lump-sum settlement as to amounts due through January 31, 2007. The parties now seek to litigate myriad legal and factual issues concerning the calculation of Werb's monthly benefit, including whether a particular summary plan description has any legal effect; whether Werb's benefits should be based on his salary alone or instead should include his 401(k) employer match and moving expenses that he received; and whether his benefits are subject to any offsets. The parties have also requested additional briefing and a hearing. Alternatively, ReliaStar argues that the Court should remand this matter so that ReliaStar can calculate the benefit amount in the first instance.

The Court agrees with ReliaStar that this case should be remanded. ERISA "affords the courts a range of remedial powers . . . and returning the case to a plan administrator for further consideration is often appropriate." *King v. Hartford Life & Acc. Ins. Co.*, 414 F.3d 994, 1005 (8th Cir. 2005) (en banc). It is apparent that, until recently, the parties have not focused on the amount of the monthly benefit to which Werb is entitled. The Court was blindsided by the

nature and scope of their disputes on the issue; even though Werb moved for full (not partial) summary judgment, the parties gave the Court no hint that they disagreed so profoundly about what is normally a straightforward calculation. Indeed, the nature and scope of the parties' disputes essentially present a new lawsuit that is separate from the lawsuit that was originally filed. The Court believes that these disputes would benefit from going through the administrative process, where the parties can develop a full record. *Cf. id.* at 1006 ("In this case, a return to the administrator has the additional salutary effect of permitting the administrator to consider in the first instance evidence received by the district court, but not presented to the administrator . . . .").

The Court will therefore remand this issue and ask that it be addressed by ReliaStar in the first instance. If the parties are not able to resolve the issue through the administrative process, the Court will order them to attend a settlement conference before Judge Mayeron or before a private mediator of their choice before any further litigation takes place.

### B. Prejudgment Interest

Werb also seeks reconsideration of the Court's earlier ruling that prejudgment interest should be calculated under 28 U.S.C. § 1961. Werb now argues that the rate of interest is within the Court's discretion and that the Court should apply a higher rate than that applicable under § 1961. Contrary to the local rules, however, Werb did not first seek the Court's permission to move for reconsideration. *See* D. Minn. L.R. 7.1(j). In any event, Werb cannot meet the standard for such a motion, which requires a showing of "compelling circumstances . . . ." *Id.*; *see Nelson v. Am. Home Assur. Co.*, 702 F.3d 1038, 1043 (8th Cir. 2012) (noting that motions to

reconsider are treated as Fed. R. Civ. P. 60(b) motions when directed at non-final orders and require a showing of exceptional circumstances necessitating extraordinary relief).

Werb could have — but did not — address the appropriate rate by which to calculate prejudgment interest in his original summary-judgment motion.  Instead, he provided the Court with a one-sentence assertion that he should be awarded prejudgment interest and a stringcite to five cases, one of which expressly approved the use of § 1961 to calculate prejudgment interest and four of which did not discuss how prejudgment interest should be calculated.  *See* ECF No. 37 at 25.  As far as the Court could tell, Werb was *asking* for prejudgment interest to be calculated under § 1961, and the Court believed that it was granting him what he asked for.  His current desire to litigate an issue that he could and should have addressed earlier does not come anywhere close to "compelling circumstances."  *Cf. Nelson*, 702 F.3d at 1043 (no abuse of discretion in denying motion to reconsider when plaintiffs could have submitted the "new" evidence with their original motion for summary judgment).

### C.  Attorney's Fees

Finally, the parties dispute the amount of attorney's fees to which Werb is entitled.  Werb seeks fees of $194,793.50 and costs in the amount of $1,627.00, for a total of $196,420.50.  ReliaStar contends that the fee amount should be reduced to $53,910.

The Court first notes that it will not, at this time, award fees for any of counsel's work following the Court's summary-judgment order (with the exception of counsel's review of the order and discussion of it with Werb).  As noted, the Court had no idea that there were so many disputes to be resolved, and it is yet to be seen whether Werb will prevail on any of them.  (Some of the post-order work — for example, counsel's work on the issue of prejudgment interest — is

clearly not compensable.)  It is therefore premature to award any fees for that work.  *Cf. Geissal ex rel. Estate of Geissal v. Moore Med. Corp.*, 338 F.3d 926, 936 (8th Cir. 2003) (affirming reduced fee award where plaintiff "prevailed on the question of liability and then wasted valuable resources of all the parties, including an ERISA plan, in litigating monetary remedy questions that should have been settled").

"The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."  *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002).  Werb's three attorneys (who are admittedly very experienced) seek hourly rates of $425, $375, and $350, respectively.  Werb argues that these rates are reasonable in light of prevailing national rates.  The Court does not agree with Werb that the proper reference point is national (as opposed to local) rates.  "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated."  *Id.*  Although under certain circumstances a court can award a rate that prevails in another locality, *see, e.g.*, *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995) (per curiam), the Court sees no reason to do so in this case, *cf. Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014) (the flexibility to award a higher rate than that prevailing in the locality "does not mean that a district court is forbidden in the ordinary case to focus on the community in which the case was litigated"); *McDowell v. Price*, 731 F.3d 775, 784 (8th Cir. 2013) (affirming award in ERISA case where district court used local fee awards as a guide).

In *Bowers v. Life Insurance Co. of North America*, Judge Ann Montgomery recently found that an hourly rate of $350 was too high for an ERISA attorney with over two decades of

experience and reduced the rate to $320. No. 13-CV-0891 (ADM/JJG), 2014 WL 4265828, at *4 (D. Minn. Aug. 28, 2014). The Court finds Judge Montgomery's analysis persuasive. In light of the fact that attorney Mark Nolan has over four decades of experience, however, the Court finds that $350 is a reasonable hourly rate for him. The Court will award an hourly rate of $320 for the other attorneys, each of whom has more than two decades of experience.

As for the number of hours expended, the Court agrees with ReliaStar that they are excessive. Werb's counsel estimate that they spent 421.65 hours litigating this case (not including the time that the Court has excluded).[2] That is the equivalent of over ten and a half weeks of full-time work. *Cf. McClelland v. Life Ins. Co. of N. Am.*, 679 F.3d 755, 762 (8th Cir. 2012) (finding that spending over 500 hours on a case that involved two separate rounds of summary judgment was "clearly excessive").

It is true that this case involved an especially large administrative record and that ReliaStar did not help matters by inexplicably re-ordering and re-numbering the record between the administrative process and the summary-judgment motions. (Indeed, the Court itself found the record much more cumbersome than usual as a result.) But, as ReliaStar notes, Werb's counsel should have been intimately familiar with the record from the previous litigation, and a paralegal or secretary could have cross-referenced the newly (dis)organized record with the previous version. Moreover, as ReliaStar notes, much of Werb's argument focused on the procedural history of the case rather than on medical information found in the administrative record.

---

[2] The Court also excludes three hours billed by "RVT," who is not identified and whose requested hourly rate ($375) is not supported.

In addition, much of the work performed by Werb's attorneys appears to have been duplicative or otherwise unnecessary.  Two senior attorneys spent an excessive amount of time reviewing each other's draft briefs and researching case law on such matters as the standard of review.  The standard of review arises in nearly every ERISA case, and one reason why an experienced ERISA attorney can command more than $300 per hour is because he should not need to spend a lot of time researching such issues.  The Court also agrees with ReliaStar that Werb's attorneys spent an excessive amount of time drafting routine documents and failed to exclude all of the time associated with their abortive attempt to bring this as a class action.

Rather than flyspeck counsel's time records — which are simply counsel's reconstructed estimates and (likely for that reason) consist of a great deal of block-billing, *see* Nolan Aff. ¶ 11, Sept. 19, 2014 — the Court will apply a 40 percent reduction to account for the duplicative and excessive time.  This results in an award of $84,074 in fees and costs.[3]  Despite the reduction, this is a substantial award that is sufficient to account for the complexities in this case.  *Cf. McClelland*, 679 F.3d at 762 (finding excessive an award of over $134,000 in a complex ERISA case and reducing it to $85,000); *Bowers*, 2014 WL 4265828, at *5 (awarding $54,819.63 in fees and costs in an ERISA case).[4]

---

[3]Multiplying counsel's reduced hourly rates by the number of unexcluded hours yields a fee of $131,435.  Sixty percent of that figure is $78,861.  Adding in the paralegal time and the costs yields the final figure.

[4]One of the affidavits in support of Werb's fee petition notes that, several years ago, the undersigned awarded approximately $100,000 in attorney's fees in an ERISA case involving a much smaller record.  *See MacNally v. Life Ins. Co. of N. Am.*, No. 07-CV-4432 (PJS/JJG), ECF No. 82.  The insurer in that case did not file any response to the fee petition, however, and the undersigned therefore treated the petition as unopposed and granted it without further analysis.  *Id.*

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff is entitled to recover attorney's fees and costs from defendant in the amount of $84,074.

2. This matter is REMANDED to defendant for a determination of the amount of plaintiff's monthly benefit.

3. If the parties' dispute is not resolved through the administrative process, the parties must contact Judge Mayeron or an agreed-upon private mediator to schedule a settlement conference. No party should file a motion until all efforts to settle the case have been exhausted.

4. The parties' joint request for additional briefing and a hearing [ECF No. 66] is DENIED.

Dated:  October 27, 2014           s/Patrick J. Schiltz
                                                                Patrick J. Schiltz
                                                                United States District Judge